**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| COURTNEY PORTER | |
| Plaintiff, | Civil Action No. |
| v. | |
| JANUS RESEARCH GROUP, LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff Courtney Porter ("Plaintiff") files this Complaint against Defendant JANUS Research Group, LLC ("Defendant"), alleging that Defendant terminated her employment after she informed her manager that she was pregnant and requested a reasonable accommodation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 ("Title VII"), and the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (the "ADA").  Plaintiff further alleges that Defendant violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* (the "FMLA") by (1) interfering with her rights under the FMLA, and (2) retaliating against her for engaging in protected activity under the FMLA.

Plaintiff shows the Court as follows:

## NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.      Plaintiff claims that Defendant violated Title VII by (1) discriminating against her because she was pregnant, (2) failing to provide a reasonable accommodation for her pregnancy and/or pregnancy-related medical condition, and (3) retaliating against her for requesting a reasonable accommodation for her pregnancy and/or pregnancy-related medical condition.

2.      Plaintiff further claims that Defendant violated the ADA by: (1) discriminating against Plaintiff by terminating her employment because of her pregnancy-related disability, (2) failing to provide Plaintiff with a reasonable accommodation for her pregnancy-related disability, and (3) retaliating against her for having requested a reasonable accommodation for her pregnancy-related disability.

3.      Additionally, Plaintiff claims that Defendant violated the FMLA by terminating her employment shortly before her previously-approved FMLA leave was scheduled to begin, and approximately three (3) days after she requested that she be permitted to begin her FMLA leave early after and because she was induced earlier than expected for medical reasons.  By terminating Plaintiff's employment after she requested that she be permitted to take FMLA leave early, while she was effectively on FMLA leave, and immediately prior to the anticipated beginning of her pre-approved FMLA leave, Defendant interfered with Plaintiff's FMLA rights and/or retaliated against her for using such rights.

4.      With respect to her Title VII and ADA claims, Plaintiff seeks declaratory relief, lost wages and benefits, compensatory and punitive damages, interest, and attorneys' fees and costs.

5.      With respect to her FMLA claims, Plaintiff seeks declaratory relief, lost wages and benefits, liquidated damages, interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This court has federal-question jurisdiction over Plaintiff's Title VII, ADA, and FMLA claims, pursuant to 28 U.S.C. § 1331.

7.      Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 2.1(a), venue is proper in this Court because Defendant's Principal Office Address is located in the Augusta Division of the Southern District of Georgia.

## PARTIES

8.      Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits herself to the jurisdiction of this court.

9.      Plaintiff was formerly employed by Defendant as a Tactical Network Engineer from approximately September 9, 2019, until on or about April 8, 2022.

10.     Defendant is a Delaware limited-liability company that is registered with the Georgia Secretary of State to do business within the State of Georgia.  Defendant's Principal Office Address registered with the Georgia Secretary of State is located within the Augusta Division of the Southern District of Georgia.

11.     Defendant may be served with process through its registered agent, "Corporation Service Company," at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12.     Defendant was an "employer" within the meaning of Title VII and the ADA at all relevant times, and is subject to and governed by the FMLA.

13.     Plaintiff was Defendant's "employee" within the meaning of Title VII and the ADA at all relevant times, and was an "eligible employee" at all relevant times within the meaning of the FLSA.

## ADMINISTRATIVE EXHAUSTION

14.      Plaintiff has satisfied all administrative prerequisites for bringing her Title VII and ADA claims in this Court.

15.     On June 9, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 410-2022-06058), in which she asserted her Title VII and ADA claims against Defendant.

16.     On December 14, 2022, the EEOC issued a Notice of Right to Sue on Plaintiff's Title VII and ADA claims.

17.     Plaintiff brings this suit within ninety (90) days of her receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

18.     Defendant employed Plaintiff from on or about September 9, 2019, until on or about April 8, 2022.  Plaintiff's last position with Defendant was Tactical Network Engineer.

19.     Plaintiff was qualified to fulfill the essential functions of the Tactical Network Engineer role with or without an accommodation, which role she had successfully performed for Defendant for approximately two-and-a-half (2.5) years before Defendant terminated her employment in April 2022.

20.     As a Tactical Network Engineer, Plaintiff's primary job duties involved supporting Defendant's Government Leads with network and software configuration, which required her to travel frequently to different posts to help with equipment validation and testing.  When Plaintiff was not traveling, she worked remotely from home.

21.     In March 2021, Plaintiff accepted a transfer from New York to Augusta, Georgia, which transfer she had sought so that she could be closer to her family.

22.     As a result of her transfer, Plaintiff was tasked with performing work for, and in support of, the U.S. Army at Fort Gordon pursuant to a contract that the Army had with Defendant.

23.     Upon her arrival in the Augusta area in March 2021, Government Task Leader Raul Torres told Plaintiff that she was to focus on working with a third-party vendor, "Aaski," and its personnel in supporting Defendant's work for the Army.  Plaintiff was also provided the names of two Army staff members with whom she was expected to interact, and with whom she did interact, as necessary to complete her work.

24.     In order to perform her work, Plaintiff would meet with Aaski personnel at two different Aaski facilities located off-base from Fort Gordon, which personnel would grant her access to those facilities as needed.  For the remainder of the time, Plaintiff almost entirely worked remotely.

25.     Plaintiff's duties did not require her to regularly access Army facilities on-base at Fort Gordon, nor was she ever directed or required by Defendant to obtain a passkey to access those on-base facilities.

26.     In addition to her work for Defendant in the Augusta area, Plaintiff continued to regularly travel out-of-state for work between March 2021 and October 2021, including to Texas, Illinois, and Florida.

27.     In approximately late September 2021, Plaintiff told Government Lead Torres that she had been diagnosed with hyperemesis gravidarum (extreme morning sickness).

28.     In October 2021, Plaintiff informed her supervisor, Cecil Hauser, that she was pregnant, but she did not request any change to her travel schedule at that time.

29.     Rather, Plaintiff told Mr. Hauser in October 2021 that she could continue traveling until week thirty-six (36) of her pregnancy, as advised by her physician.  Nevertheless, Plaintiff's out-of-state travel was effectively stopped after she disclosed to Mr. Hauser that she was pregnant. This was not Plaintiff's choice, nor did it occur at her request.

30.     In January 2022, Plaintiff spoke with Defendant's Senior Vice President, Joseph Bailey, about a possible transfer to a Test Engineer position.

31.     Although Plaintiff had not requested a transfer or a change to her travel duties, Mr. Bailey suggested that the new position would be a good fit for her given her pregnancy because it would reduce her travel obligations.  Mr. Bailey stated that he would get back to Plaintiff about the new position but never did.

32.     During her January 2022 conversation with Mr. Bailey regarding a possible transfer, Mr. Bailey did not mention anything to Plaintiff regarding any alleged concerns about Plaintiff's performance or availability.

33.      In late January 2022, Plaintiff spoke with Mr. Hauser, who informed her for the first time that he had heard that some Army employees at Fort Gordon did not know who she was, and that he had expected her to take a more visible role with the Fort Gordon employees with whom she was working.  Mr. Hauser also expressed concern that Plaintiff was not fulfilling the duties expected of her outside of her Aaski work.

34.     Shortly after her conversation with Mr. Hauser, Plaintiff asked him about the feedback that she had received.  Specifically, Plaintiff noted that (a) she had not been told when she first transferred to Fort Gordon that she needed to focus on establishing relationships with Army personnel beyond the few directly involved in the work that she performed in coordination with Aaski, and (b) no one had previously mentioned that she was not fulfilling duties expected of her outside of the Aaski work, which was the only work that she had been assigned in March 2021.

35.     Beginning in approximately January or February 2022, Plaintiff began experiencing pregnancy-related high blood pressure.  As a result, she began weekly in-person

appointments with her doctor to monitor her blood pressure, which was potentially life-threatening.

36.     In February 2022, Plaintiff requested maternity leave pursuant to the FMLA, which leave was scheduled to begin on or about April 16, 2022, and which FMLA request Defendant approved.

37.     In approximately March 2022, Plaintiff informed Mr. Hauser that she was experiencing pregnancy-related high blood pressure.

38.     In approximately March 2022, Government Lead Torres informed Plaintiff that she was to begin traveling again.  Plaintiff responded via email that she had been advised by her doctor that she was no longer able to travel because she was in week 36 of her pregnancy.  Mr. Torres did not respond to Plaintiff's email, but she was taken off of travel duty.

39.     Plaintiff's March 2022 email stating that she could not travel as a result of her pregnancy constituted a request for a reasonable accommodation for her pregnancy and/or pregnancy-related medical condition under Title VII, and a request for a reasonable accommodation for her pregnancy-related disability under the ADA.

40.     Plaintiff's March 2022 accommodation request also constituted protected activity for the purposes of Title VII and the ADA.

41.     Shortly thereafter, on or about March 29, 2022, Senior Vice President Bailey informed Plaintiff that the Army no longer wanted her on the Fort Gordon contract due to alleged "availability and performance" issues.  Defendant removed Plaintiff from her position at Fort Gordon, effectively immediately.

42.     Senior Vice President Bailey did not elaborate on Plaintiff's alleged performance or availability issues, nor did he tell Plaintiff that Defendant was trying to find her another position

following her removal from the Fort Gordon contract. Rather, Mr. Bailey stated that he would touch base with Plaintiff about finding another position after she returned from her FMLA leave.

43.    Between March 29, 2022, and April 5, 2022, Plaintiff used her accrued personal time off prior to her previously approved FMLA leave, which was scheduled to start on April 16, 2022.

44.    However, on April 5, 2022, Plaintiff sent Senior Vice President Bailey a text message stating that she was unexpectedly being induced that day (as a result of her pregnancy-related high blood pressure), and that she would need to start her FMLA leave approximately one (1) week early. Plaintiff also informed Tina Brown in Human Resources via email that she was being induced that day.

45.    Plaintiff's April 5, 2022 request to start her FMLA leave early as a result of her unexpected early inducement constituted a request for a reasonable accommodation for her pregnancy, childbirth, and/or pregnancy-related medical condition under Title VII, and a request for a reasonable accommodation for her pregnancy-related disability under the ADA.

46.    Plaintiff's April 5, 2022 accommodation request also constituted protected activity for the purposes of Title VII, the ADA, and the FMLA.

47.    Three days later, on April 8, 2022, Senior Vice President Bailey told Plaintiff during a phone call that she was being terminated effective immediately due to "performance and lack of availability."

48.    Plaintiff was effectively on FMLA leave when she was terminated.

49.    During that April 8, 2022 phone call, Mr. Bailey never told Plaintiff that Defendant was attempting to find her an alternative position, nor did he elaborate on Army's purported issues with Plaintiff's performance or availability.

50.     Plaintiff subsequently received separation paperwork from Defendant that cited as the reason for her termination that she was "unable to fulfill the duties of position."

51.     Defendant's reasons for terminating Plaintiff's employment were pretextual.

52.     Defendant discriminated against Plaintiff by terminating her employment because of her pregnancy, childbirth, and/or pregnancy-related medical condition; failed to provide a reasonable accommodation for her pregnancy and/or pregnancy-related medical condition; and/or retaliated against Plaintiff for requesting an accommodation for her pregnancy, all in violation of Title VII.

53.     Additionally, or alternatively, Defendant discriminated against Plaintiff by terminating her employment because of her pregnancy-related disability, because Defendant regarded her as disabled, and/or because she requested an accommodation for her disability; failed to provide a reasonable accommodation for Plaintiff's disability; and/or retaliated against Plaintiff for requesting a reasonable accommodation, all in violation of the ADA.

54.     Additionally, or alternatively, Defendant terminated Plaintiff's employment because she requested that she be permitted to begin her pre-approved FMLA leave early after she was unexpectedly induced before her previously-approved start date.

55.     Defendant's termination of Plaintiff interfered with her rights to benefits under the FMLA.

56.     Due to Defendant's violations of Title VII, the ADA, and/or the FMLA, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

57.     Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under Title VII and/or the ADA.

58.     Defendant's violations of the FMLA were willful and not in good faith.

## COUNT I
## Failure to Accommodate Pregnancy in Violation of Title VII

59.     Plaintiff, who was a pregnant woman when she requested a reasonable accommodation for her pregnancy, childbirth, and/or pregnancy-related medical condition (high blood pressure), was a member of a protected class for the purposes of Title VII.

60.     At all relevant times, Defendant was an "employer" within the meaning of Title VII.

61.     At all relevant times, Plaintiff was qualified for the position of Tactical Network Engineer, which role she had successfully performed for over 2.5 years before Defendant terminated her employment on or about April 8, 2022.

62.     In late March 2022, Plaintiff requested a reasonable accommodation for her pregnancy and/or pregnancy-related medical condition, to wit, that she not be placed on travel duty because her doctor had advised her that she could no longer travel because she was in week 36 of her pregnancy.

63.     Further, on or about April 5, 2022, Plaintiff requested another reasonable accommodation for her pregnancy, childbirth, and/or related medical condition (high blood pressure), to wit, that she be permitted to begin her FMLA leave approximately one (1) week early after she was unexpectedly induced before her previously-approved FMLA maternity leave was set to begin.

64.     On April 8, 2022, Defendant's Senior Vice President Bailey informed Plaintiff that Defendant was terminating her employment, three (3) days after Plaintiff informed HR Representative Brown and Senior Vice President Bailey that she was being induced early and

requested an accommodation for that early inducement, and approximately two (2) weeks after Plaintiff requested that she not be required to travel because she was in week 36 of her pregnancy.

65.   Mr. Bailey, as Defendant's Senior Vice President, had the authority to make decisions on behalf of Defendant regarding, *inter alia*, providing an accommodation.

66.   Defendant did not provide Plaintiff with a reasonable accommodation for her pregnancy, childbirth, and/or pregnancy-related medical condition (high blood pressure) but instead terminated her on or about April 8, 2022, shortly after she requested reasonable accommodations for her pregnancy, childbirth, and/or pregnancy-related medical condition.

67.   As a direct and proximate result of Defendant's failure to provide Plaintiff with a reasonable accommodation, she has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

68.   In denying Plaintiff a reasonable accommodation for her pregnancy, childbirth, and/or pregnancy-related medical condition, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's Title VII rights.

69.   Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT II
### Discriminatory Termination on the Basis of Sex (Pregnancy) in Violation of Title VII

70.   Plaintiff was a member of a protected class for the purposes of Title VII.

71.   At all relevant times, Defendant was Plaintiff's "employer" within the meaning of Title VII.

72.     At all relevant times, Plaintiff was qualified for the position of Tactical Network Engineer, which role she had successfully performed for over 2.5 years before Defendant terminated her employment on or about April 8, 2022.

73.     On April 8, 2022, Defendant's Senior Vice President Bailey informed Plaintiff that Defendant was terminating her employment, three (3) days after Plaintiff informed HR Representative Brown and Senior Vice President Bailey that she was being induced early and requested an accommodation for that early inducement, and approximately two (2) weeks after Plaintiff requested that she not be required to travel because she was in week 36 of her pregnancy.

74.     Mr. Bailey, as Defendant's Senior Vice President, had the authority to make hiring and firing decisions on behalf of Defendant with respect to Plaintiff.

75.     Defendant's citation to alleged performance and availability issues, which alleged issues Defendant claimed warranted terminating Plaintiff, were pretext for discrimination, as she had fully performed her essential job duties assigned to her by Government Lead Torres in March 2021.

76.     As a direct and proximate result of Defendant's discriminatory termination of Plaintiff, she has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

77.     In discriminating against Plaintiff on the basis of her sex (pregnancy), Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's Title VII rights.

78.     Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT III
## Retaliatory Termination in Violation of Title VII

79.   At all relevant times, Defendant was Plaintiff's "employer" within the meaning of Title VII.

80.   At all relevant times, Plaintiff was Defendant's "employee" within the meaning of Title VII.

81.   Plaintiff engaged in protected activity under Title VII by requesting a reasonable accommodation for her pregnancy, childbirth, and/or related medical condition (high blood pressure), to wit, that she not be required to travel beyond her 35th week of her pregnancy upon the advice of her doctor, and that she be permitted to begin her FMLA leave approximately one week early after she was unexpectedly induced before that leave was set to begin because of her pregnancy-related high blood pressure.

82.   Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by terminating her employment three (3) days after Plaintiff informed HR Representative Brown and Senior Vice President Bailey that she was being induced early and requested an accommodation for that early inducement, and approximately two (2) weeks after Plaintiff requested that she not be required to travel because she was in week 36 of her pregnancy.

83.   Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

84.   As a consequence of the retaliation that she experienced from Defendant, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

85.     In retaliating against Plaintiff for engaging in protected activity, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's Title VII rights.

86.     Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

### COUNT IV
### Failure to Accommodate in Violation of the ADA

87.     At the time that she requested an accommodation, Plaintiff was an employee with a disability within the meaning of the ADA, to wit, pregnancy-related high blood pressure.

88.     At all relevant times, Plaintiff was qualified for the position of Tactical Network Engineer with or without an accommodation, which role she had successfully performed for over 2.5 years before Defendant terminated her employment on or about April 8, 2022.

89.     At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

90.     In late March 2022, Plaintiff requested that she not be placed on travel duty because her doctor had advised her that she could no longer travel because she was in week 36 of her pregnancy.

91.     Further, on or about April 5, 2022, Plaintiff requested that she be permitted to begin her FMLA leave approximately one week early after she was unexpectedly induced before that leave was set to begin because of her pregnancy-related high blood pressure.

92.     On April 8, 2022, Defendant's Senior Vice President Bailey informed Plaintiff that Defendant was terminating her employment, three (3) days after Plaintiff informed HR Representative Brown and Senior Vice President Bailey that she was being induced early and

requested an accommodation for that early inducement, and approximately two (2) weeks after Plaintiff requested that she not be required to travel because she was in week 36 of her pregnancy.

93.    Mr. Bailey, as Defendant's Senior Vice President, had the authority to make decisions regarding on behalf of Defendant, *inter alia*, providing a reasonable accommodation.

94.    Defendant did not provide Plaintiff with a reasonable accommodation for her pregnancy but instead terminated Plaintiff on or about April 8, 2022, shortly after Plaintiff requested reasonable accommodations for her pregnancy-related disability.

95.    Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation for her disability.

96.    As a result of Defendant's violations of the ADA, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

97.    In denying Plaintiff a reasonable accommodation for her pregnancy-related disability, Defendant acted with malice and/or with reckless indifference to Plaintiff's federally-protected rights under the ADA.

98.    Plaintiff seeks all available relief under the ADA, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT V
### Discriminatory Termination in Violation of the ADA

99.    Plaintiff was an individual with a disability within the meaning of the ADA, to wit, pregnancy-related high blood pressure.

100.    Defendant regarded Plaintiff as having a disability, as set forth in 42 U.S.C. § 12102(1)(C).

101.    At all relevant times, Plaintiff was qualified for the position of Tactical Network Engineer, which role she had successfully performed for over 2.5 years before Defendant terminated her employment on or about April 8, 2022.

102.    At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

103.    On April 8, 2022, Defendant's Senior Vice President Bailey informed Plaintiff that Defendant was terminating her employment, three (3) days after Plaintiff informed HR Representative Brown and Senior Vice President Bailey that she was being induced early and requested an accommodation for that early inducement, and approximately two (2) weeks after Plaintiff requested that she not be required to travel because she was in week 36 of her pregnancy.

104.    Mr. Bailey, as Defendant's Senior Vice President, had the authority to make hiring and firing decisions on behalf of Defendant with respect to Plaintiff.

105.    Defendant's reliance on Plaintiff's alleged performance and availability issues was pretext for discrimination, as she fully performed the essential job duties assigned to her by Government Lead Torres in March 2021.

106.    Defendant violated the ADA by discriminating against Plaintiff by terminating her employment because of her disability and/or because Defendant regarded her as disabled. Specifically, Defendant terminated Plaintiff's employment because of her pregnancy-related disability (high blood pressure) and/or because Defendant regarded her as disabled.

107.    Defendant was aware of Plaintiff's pregnancy-related disability because¸ *inter alia*, Plaintiff informed Mr. Hauser of her pregnancy in October 2021; she discussed her pregnancy with Senior Vice President Bailey multiple times between January and April 2022, including when she informed Ms. Bailey on April 5, 2022 that she was being induced early and requested a reasonable

accommodation; and, in approximately March 2022, Plaintiff informed Mr. Hauser that she was experiencing pregnancy-related high blood pressure.

108.     As a result of Defendant's violations of the ADA, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

109.     In discriminating against Plaintiff because of her pregnancy-related disability and/or because Defendant regarded Plaintiff as disabled, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under the ADA.

110.     Plaintiff seeks all available relief under the ADA, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs

### COUNT VI
### Retaliatory Termination in Violation of the ADA

111.     At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

112.     Plaintiff engaged in protected activity under the ADA by expressly requesting a reasonable accommodation for her pregnancy-related disability, which included that she not be required to travel beyond her 35th week of her pregnancy upon the advice of her doctor, and that she be permitted to begin her previously-approved FMLA leave approximately one week early after she was unexpectedly induced early because of her pregnancy-related high blood pressure.

113.     Defendant retaliated against Plaintiff for engaging in protected activity under the ADA by terminating her employment three (3) days after Plaintiff informed HR Representative Brown and Senior Vice President Bailey that she was being induced early and requested an

accommodation for that early inducement, and approximately two (2) weeks after Plaintiff requested that she not be required to travel because she was in week 36 of her pregnancy.

114.    Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

115.    As a consequence of Defendant's retaliation, Plaintiff has incurred lost wages and benefits.

116.    In retaliating against Plaintiff for engaging in protected activity under the ADA, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under the ADA.

117.    Plaintiff seeks all available relief under the ADA, including lost wages and benefits, prejudgment and post judgment interest, and reasonable attorneys' fees and costs.

**COUNT VII**
**Interference in Violation of the FMLA**

118.    Plaintiff was an "eligible employee" of Defendant within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

119.    At all relevant times, Defendant was and continues to be a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

120.    Plaintiff requested FMLA maternity leave to begin on or about April 16, 2022, which leave was approved by Defendant.

121.    Plaintiff further requested that she be permitted to begin her FMLA leave on or about April 5, 2022, after she was unexpectedly induced early because of her pregnancy-related high blood pressure.

122.   Defendant terminated Plaintiff on or about April 8, 2022, after she requested that she begin her pre-approved FMLA leave early, and approximately one week before her pre-approved FMLA leave was originally set to begin.

123.   Defendant terminated Plaintiff while she was on FMLA-protected leave.

124.   Defendant's termination of Plaintiff's employment interfered with an FMLA benefit to which she was entitled.

125.   As a direct and proximate cause of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has been damaged and is entitled to declaratory relief, lost wages and benefits, front pay in lieu of reinstatement, liquidated damages, and attorneys' fees and costs.

## COUNT VIII
## Retaliation in Violation of the FMLA

126.   Plaintiff was an "eligible employee" of Defendant within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

127.   Defendant was and continues to be a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

128.   Plaintiff engaged in protected activity under the FMLA by requesting and taking FMLA leave, which leave was set to begin on or about April 16, 2022, and which was approved by Defendant.

129.   Plaintiff also engaged in protected activity under the FMLA by requesting that she be permitted to begin her previously-approved FMLA leave on or about April 5, 2022, after she was unexpectedly induced early because of her pregnancy-related high blood pressure, and then taking FMLA-protected leave.

130.   Defendant terminated Plaintiff on or about April 8, 2022, because she engaged in protected activity; specifically, because Plaintiff requested and took FMLA leave.

131.    Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

132.    As a direct and proximate cause of Defendant's unlawful retaliation against Plaintiff, she has been damaged and is entitled to declaratory relief, lost wages and benefits, front pay in lieu of reinstatement, liquidated damages, and attorneys' fees and costs

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)      A declaratory judgment that the practices of Defendant complained of herein are unlawful under Title VII, the ADA, and the FMLA;

b)      An award of her full lost wages and benefits;

c)      An award of compensatory and punitive damages in an amount to be determined by the jury;

d)      An award of liquidated damages;

e)      An award of prejudgment and post-judgment interest;

f)      An award of Plaintiff's attorneys' fees and costs; and

g)      All other equitable and other further relief as this Court deems just and proper.

Respectfully submitted this 21st day of December 2022.

/s/ Michael D. Forrest
Michael D. Forrest
Georgia Bar No. 974300
Justin M. Scott
Georgia Bar No. 557463
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

Counsel for Plaintiff

JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| COURTNEY PORTER | JANUS RESEARCH GROUP, LLC |

| (b)   County of Residence of First Listed Plaintiff    Richmond, Georgia | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Justin M. Scott and Michael D. Forrest, Scott Employment Law P.C. 160 Clairemont Avenue, Suite 610, Decatur, GA 30030 Telephone: (678) 780-4880 | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
        Plaintiff

☒ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit ☐ 485 Telephone Consumer Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
        Proceeding

☐ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        Another District
        *(specify)*

☐ 6   Multidistrict
        Litigation -
        Transfer

☐ 8   Multidistrict
        Litigation -
        Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42 U.S.C. 2000e et seq.), the ADA (42 U.S.C. 12101 et seq.), and the FMLA (29 U.S.C. 2601 et seq.)

Brief description of cause:
Failure to accommodate, discrimination, and retaliation under Title VII & ADA; FMLA interference and retaliation

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
        UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
12/21/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____